**Robert R. BRIGHT**

v.

**John W. MACY, Jr., L. J. Andolsek, and Robert E. Hampton, as Chairman and Members, respectively, of the U. S. Civil Service Commission, Stanley R. Resor, as Secretary of the Army, Col. Paul R. Cerar, as Commanding Officer, Edgewood Arsenal, a command complex of the Department of the Army, and William J. Foland, as Chief, Civilian Personnel Office, Edgewood Arsenal.**

**Civ. A. No. 18062.**

United States District Court
D. Maryland.
Dec. 20, 1967.

Robert R. Bright, in pro. per.

Stephen H. Sachs, U. S. Atty., and Nevett Steele, Jr., Asst. U. S. Atty., Baltimore, Md., for defendants.

NORTHROP, District Judge.

Since on or before August 1, 1962, the plaintiff, Robert R. Bright, has been the chief legal advisor to the Edgewood Arsenal Command Complex and its predecessor agency, the Chemical-Biological-Radiological Agency (CBR Agency), a command complex of the Department of the Army with headquarters in Edgewood, Maryland.

In 1962 there was an Army reorganization which, *inter alia,* resulted in the abolishment of the Chemical Corps Materiel Command and the Chemical Corps and the establishment of the United States Army Materiel Command and The United States Munitions Command. Pursuant to this reorganization plaintiff's position as Supervisory Attorney-Advisor (General) was abolished and he was subjected to reduction-in-force procedures and he was reassigned to the position of Attorney-Advisor (General) in the newly created United States Army CBR Agency. Both positions held by the plaintiff were allocated a GS-15 rank.

There is no question that plaintiff's reassignment in 1962 was properly processed by application of reduction-in-force procedures. The pertinent statutes and regulations follow:

Section 12 of the Veterans' Preference Act of 1944 as amended, 5 U.S.C.A. § 861:

"In any reduction in personnel in any civilian service of any Federal agency, competing employees shall be released in accordance with Civil Service Commission regulations which shall give due effect to tenure of employment, military preference, length of service, and efficiency ratings: Provided, That

the length of time spent in active service in the armed forces of the United States of each such employee shall be credited in computing length of total service: Provided further, That preference employees whose efficiency ratings are 'good' or better shall be retained in preference to all other competing employees and that preference employees whose efficiency ratings are below 'good' shall be retained in preference to competing nonpreference employees who have equal or lower efficiency ratings: And provided further, That when any or all of the functions of any agency are transferred to, or when any agency is replaced by, some other agency, or agencies, all preference employees in the function or functions transferred or in the agency which is replaced by some other agency shall first be transferred to the replacing agency, or agencies, for employment in positions for which they are qualified, before such agency, or agencies, shall appoint additional employees from any other source for such positions."

5 C.F.R. 351.201:

"(a) Each agency shall follow this part when it releases a competing employee from his competitive level by separation, demotion, furlough for more than 30 days, or reassignment requiring displacement, when the release is required because of lack of work, shortage of funds, *reorganization,* or the exercise of reemployment rights or restoration rights." [Emphasis added.]

5 C.F.R. 351.203(g):

" 'Reorganization' means the planned elimination, addition or redistribution of functions or duties in an organization."

In explaining reductions-in-forces based on reorganizations, Section 351.11, paragraphs 2–6, of the Federal Personnel Manual reads in pertinent part as follows:

"a. For reduction-in-force purposes, a reorganization occurs when management at any level adds to, takes from or redistributes the functions or duties of one or more positions. When a reorganization is the cause of a separation, furlough for more than 30 days, change to lower grade or reassignment involving displacement, the reduction-in-force procedures must be followed."

On October 28, 1964, plaintiff received notice that his position was being downgraded from GS–15 to GS–14 under reduction-in-force procedures pursuant to an Army reorganization in May of 1963. Presumably this reclassification was based on a judgment that the nature of the work assigned to plaintiff's position was of a different type than that designated prior to the 1963 reorganization. However, insofar as plaintiff was concerned, the reorganization did not change anything except the name of his agency and, after appealing to the Civil Service Commission, he was reinstated at his previous rank of GS–15 on January 26, 1965, when the notice of reduction-in-force was canceled.

On April 22, 1965, plaintiff received a preliminary notice of demotion to GS–14. The stated ground for this action was that the annual cyclic position audit demonstrated that a downgrading was warranted. Advance notice and the right to contest the action was given because this downgrading was processed as an adverse-action rather than a reduction-in-force. Section 14 of the Veterans' Preference Act of 1944, c. 287, 58 Stat. 387, 390, 5 U.S.C. § 863 provides in part:

"No permanent or indefinite preference eligible * * * shall be * * * reduced in rank or compensation * * * except for * * * reasons given in writing, and the person whose * * * reduction in rank or compensation is sought shall have at least thirty days' advance written notice * * * stating any and all reasons, specifically and in detail, for any such proposed action; such preference eligible shall be allowed a reasonable time for answering the same personally and in writing * * *."

Although the section makes no reference to any right of hearing or to cross-

examination of witnesses, it does provide that the Civil Service Commission may promulgate regulations affecting the right of appeal thereunder. By such regulations veterans' preference eligibles are granted a right to present, examine, and cross-examine witnesses to contest the validity of the reasons stated for the action. See Coledanchise v. Macy, 265 F. Supp. 154 (D.S.C.1967). It is this which distinguishes the adverse-action from the reduction-in-force procedures. On appeal the second attempt to demote the plaintiff was canceled because of procedural deficiencies in that the reasons for the proposed action were not stated with sufficient specificity.

Then on January 6, 1966, the plaintiff was subjected to yet another attempt at demotion. This demotion was processed as a reduction-in-force because the agency claims to have found error in the initial allocation when the position was established in August of 1962 at the time of the Army reorganization. In the notice of January 6 it was stated that the error was with respect to the evaluation of the level of responsibility accorded to the position; that a new job description, designated by a new number, evaluated and allocated at GS–14, had been prepared and approved for the new position which the plaintiff had held continuously since August 1, 1962; and plaintiff was offered assignment to this job in lieu of reduction-in-force. Plaintiff was considered for reassignment at his GS–15 grade and for displacing others at that grade in a lower retention group but there were no vacancies at that level nor were there any employees that could be displaced.

The new job, which was plaintiff's old job with a new job description and a different grade allocation, was accepted by the plaintiff under protest. He filed timely appeals to the Civil Service Commission's Regional Office on March 24, 1966, alleging that the agency action was procedurally defective in that the downgrading was subject to adverse-action procedures rather than reduction-in-force. The Regional Office upheld the agency action on May 19, 1966. The Civil Service Commission Board of Appeals and Review affirmed this decision on October 19, 1966, stating that:

"The allocation of the position into which you were placed in that reorganization was thought to warrant a grade GS–15 due to a misunderstanding at that time of the degree of delegation of authority to the CBR Agency which emerged as the result of the reorganization. More recently, in the course of a cyclic position audit the error in the evaluation of the job into which you were placed in the reorganization came to light. Thus, as the Philadelphia Regional Office found, your agency correctly applied Commission requirements to correct that error by applying reduction-in-force procedures when it proceeded to demote you in the position of Supervisory Attorney-Advisor (General), GS–904–14, $20,005 per annum, (saved rate), effective March 20, 1966.

" * * *

"Contrary to the opinion you expressed both your agency and the Philadelphia Regional Office placed a proper interpretation on that part of Subchapter 2–6 of Chapter 351 in the Federal Personnel Manual which provides that when one or more positions are downgraded in a reclassification survey because of duty changes made in an earlier reorganization, any resulting demotions of the incumbents are subject to reduction-in-force procedures."

The plaintiff's administrative remedies having been exhausted, he has brought this suit under Section 14 of the Veterans' Preference Act, jurisdiction of this court being invoked under that Act and on 28 U.S.C. § 1361 and 5 U.S.C. § 1009. Both the plaintiff and the government have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, both admitting that no issue as to any material fact exists.

In determining the issues presented herein the court's review of the

Administrative Agency's action is limited to the consideration of:

(1) What procedural steps were required for the demotion in rank of this employee, and

(2) Whether they have been substantially complied with.

The record must be further examined to determine whether the agency in its action was arbitrary or capricious. See Coledanchise v. Macy,—supra.

■ This court finds that reduction-in-force procedures were improperly utilized in the demotion of the plaintiff and that the determination that the alleged error in the evaluation and allocation of plaintiff's job in 1962 can be corrected by reduction-in-force procedures merely because the mistake was allegedly made during the earlier reorganization was arbitrary and capricious and contrary to prior agency determinations.·

■ Ordinarily, constructions given to statutes and regulations by those charged with their administration are entitled to great weight. National Labor Relations Board v. Hearst Publications, Inc., 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170 (1944). The substance of the agency's decision in the present case is that any employee is subject to reduction-in-force procedures, even though his position has been duly evaluated and classified by higher authority, so long as an error with respect to the allocation of type of work, responsibility, or grade can be traced back to a prior reorganization, irrespective of when that reorganization was effected and finalized.

■ It is conceded by both parties that the applicable regulations are ambiguous. But this court will not allow the government to take advantage of ambiguities created by forced interpretations by administrative agencies of their own regulations in order that they might play fast and loose with the substantial rights of government employees. Here the plaintiff risks the loss of in-grade promotions and eventually the greater amount of retirement pay which go along with a GS–15 grade classification without being afforded the procedural guaranties which are clearly applicable.

Section 351.11, paragraph 2–6 of the Federal Personnel Manual, the Civil Service's official publication containing instructions to other agencies of the United States Government on matters of personnel management, specifically provides the following:

"(1) The agency is neither required nor permitted to use reduction-in-force procedures when a position is downgraded in either of the following situations:

"(a) When there is no material change in duties and the downgrading results either from correction of an error in classification or from a change in the classification standards."

To the same effect is the opinion of the Attorney General of the United States in 40 Ops.Att'y Gen. 510 (1949) wherein the Commission stated its view that Section 14 of the Veterans' Preference Act was applicable if the only question involved in a demotion was

"The allocation or reallocation feature, unless the appellant states that he does not question it. This feature has to do with the correctness or incorrectness of the allocation or reallocation of the position and it is purely a question of classification standards applicable to the duties and responsibilities of the position." p. 511.

In accord with this view are the regulations of the Department of the Army. The Department of the Army Civilian Personnel Circular, Circular No. 8, May 6, 1965, clearly sets out that when a position is reevaluated during the course of a cyclic position audit, and it is determined necessary to downgrade the position, an adverse action is required. In the examples supplied in the circular the Department states that error in initial allocation must be corrected by adverse action procedures. See also, Steinkirchner v. Wilson, 101 U.S.App.D.C. 92, 247 F.2d 83 (1957).

The court also notes that when the agency attempted to demote the plaintiff

in 1965, it recognized the applicability of these adverse action procedures.

Three different theories have been advanced by the agency's personnel officers on three separate occasions in their attempt to downgrade the plaintiff. The history of the case suggests that the present theory advanced, based on the allegation that there was an error at the time of the 1962 reorganization, was a mere afterthought and was an arbitrary decision to achieve a predetermined result.

Plaintiff contends that the real motivation behind all three attempts is the fact that the counsel at the next highest command, the Army Munitions Command, is also graded at GS–15, and the so-called hierarchical principle requires that the plaintiff have a grade lower than the Munitions Command counsel. But the latent motivating factors behind administrative actions are not a concern of this court. Whatever the underlying reasons, administrative proceedings must be in accordance with applicable statutes and regulations and must be free from arbitrariness.

Counsel are directed to prepare an order in accordance with this opinion.